## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. CR 09-2806 JB

MICHAEL CHRISTOPHER CARLOS,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report, and Motion for a Downward Departure and/or a Variance, filed March 23, 2012 (Doc. 157)("Objections"). The Court held a sentencing hearing on April 3, 2012. The primary issues are: (i) what is the appropriate weight of the cocaine seized that the Court should attribute to Defendant Michael Christopher Carlos; (ii) whether the Court should apply a minor role adjustment to Carlos' offense level; (iii) whether the Court should depart downward on Carlos' criminal history category because a criminal history category of III substantially over-represents the seriousness of his criminal history; and (iv) whether the Court should vary downward from Carlos' guideline imprisonment range. The Court will overrule the Objections but grant the request for a downward variance in the Objections. The Court concludes that it is more appropriate to attribute all of the cocaine found in the two bags on the train to Carlos as opposed to the cocaine found in only one of the bags. The Court does not believe a minor role adjustment is appropriate in light of Carlos' charge for misprison of felony. The Court determines that a criminal history category of II more accurately reflects Carlos' criminal history than a criminal history category of III. The Court will vary downward to a sentence of 58 days or time served, whichever is less. The Court will require

Carlos to submit to home detention and electronic monitoring for a period of 4 months.

## FACTUAL BACKGROUND

On September 2, 2009, agents from the United States Drug Enforcement Administration ("DEA") were conducting surveillance duties at the Amtrak Train Station in Albuquerque, New Mexico.  Re-Disclosed Presentence Report ¶ 9, at 4, disclosed April 3, 2012 ("Re-Disclosed PSR"). Agents boarded one of the trains, and "began conducting consensual contact with passengers on the train and identified a black leather duffle bag in the overhead luggage compartment that did not have a name tag on it" and that had a lock on it.  Id. ¶ 9, at 4-5.  Officers began to go through the train to try to determine who owned the bag.  See id. ¶ 9, at 5.  Agents then "took the bag to a private section of the train and opened the bag."  Id. ¶ 9, at 5.  "Inside the bag, agents located several articles of men's clothing as well as five brick shaped packages consistent with illegal narcotics."  Id. ¶ 9, at 5.

Agents then boarded the train a second time and located another black leather duffle bag, which was between two suitcases.  See id. ¶ 10, at 5.  "Agents began to question a male individual," Carlos, "sitting directly under the luggage compartment where the second duffle bag was found." Id. ¶ 10, at 5.  Carlos told agents that the suitcases belonged to him and his uncle, co-Defendant Ronn Nathaniel Hunter.  See id. ¶ 19, at 5.  Agents tried to locate the owner of the second bag, and then proceeded to open the bag in a private compartment on the train.  See id. ¶ 10, at 5.  The bag contained "several pieces of men's clothing and five more brick shaped packages consistent with illegal narcotics."  Id. ¶ 10, at 5.  Agents then questioned Hunter, who consented to search of one of his suitcases.  See id. ¶ 11, at 5.  The suitcase contained a package that originally contained four of the locks that appeared on the bags, but two of the locks were missing.  See id. ¶ 11, at 5.  Shortly afterwards, Carlos consented to a search of his suitcase, but agents "did not locate any contraband

or illegal items in" Carlos' suitcase.  Id. ¶ 12, at 5.  Officers found four keys in Hunter's pockets that were to the locks found in his suitcase.  See id. ¶ 12, at 5.

During a post-arrest interview, Hunter stated that Carlos "had no knowledge of the bags or their contents."  Id. ¶ 13, at 6.  Carlos "initially advised agents he had no knowledge of the two black leather duffle bags, but then he changed his story."  Id. ¶ 13, at 6.  Carlos related that he had seen Hunter purchase the two bags and that he had carried one of the bags for Hunter, but that he was unaware of the contents of the bags.  See id. ¶ 13, at 6.  Officers found a total of 12.85 gross kilograms of cocaine in the bags.  See id. ¶ 14, at 6.  Testing of the narcotics revealed that the bags contained 9.986 net kilograms of cocaine.  See id. ¶ 14, at 6.

On January 30, 2006, Carlos pled guilty to two felony charges of receiving stolen property. See id. ¶ 29, at 9.  On February 14, 2006, Carlos pled guilty to a felony count of non-support of dependents.  See id. ¶ 30, at 10.  On November 7, 2006, his probation was revoked for this conviction for the charge of non-support of dependents, and Carlos received a sentence of six-months imprisonment.  See id. ¶ 30, at 10.  Carlos has a total of four children from two different marriages.  See id. ¶¶ 38-39, at 12.  Carlos has serious medical problems with his eyes, including glaucoma and cataracts, that significantly reduce his quality of vision.  See id. ¶¶ 41-42, at 13.  Since the problems with his eyes began, Carlos has had difficulty maintaining employment.  See id. ¶ 48, at 14.

## PROCEDURAL BACKGROUND

Carlos, pursuant to a Plea Agreement, filed November 29, 2011 (Doc. 152), pled guilty to the Information, filed November 29, 2011 (Doc. 149), charging him with misprison of a felony in violation of 18 U.S.C. § 4, because he had knowledge of the actual commission of a felony of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1).  The parties agree

to a 2-level reduction on Carlos' offense level, pursuant to U.S.S.G. § 3B1.2, based on Carlos' minor role in the underlying criminal activity.  See Plea Agreement ¶ 9, at 4.  The parties, "[a]part from the stipulations set forth in" the Plea Agreement, "reserve their rights to assert any position or argument with respect to the sentence to be imposed."  Plea Agreement ¶ 9, at 6.  The parties agree to a 3-level reduction on Carlos' offense level "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct."  Plea Agreement ¶ 9, at 5.  Carlos waives his right to appeal any sentence "within or below the applicable advisory guideline range as determined by the Court."  Plea Agreement ¶ 12, at 7.

The United States Probation Office ("USPO") disclosed a Presentence Report ("PSR") for Carlos on January 25, 2012.  In the Re-Disclosed PSR, the USPO calculates Carlos' total offense level to be 16.  See Re-Disclosed PSR ¶ 27, at 8.  The Re-Disclosed PSR applies a base offense level of 19 pursuant to U.S.S.G. § 2X4.1, because "the defendant conspired to possess with intent to distribute 9.986 net kilograms of cocaine," which would yield a base offense of 32 for the felony, and because the highest allowed base offense level under U.S.S.G. § 2X4.1 is 19.  See Re-Disclosed PSR ¶ 21, at 7.  The Re-Disclosed PSR does not apply the parties' stipulated 2-level reduction under U.S.S.G. § 3B1.2 for a minor role adjustment.  See Re-Disclosed PSR ¶ 23, at 8.  The Re-Disclosed PSR notes that application note 2 to U.S.S.G. § 2X4.1 provides that a mitigating role adjustment would not normally apply for misprison of felony offenses.  See Re-Disclosed PSR ¶ 23, at 8.  The Re-Disclosed PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Carlos' acceptance of responsibility.  See Re-Disclosed PSR ¶ 26, at 8.  The Re-Disclosed PSR lists his criminal history category as III, based on 4 criminal history points.  See Re-Disclosed PSR ¶ 31, at 10.  The Re-Disclosed PSR calculates that an offense level of 16 and a criminal history category of III results in a guideline imprisonment range of 27 to 33 months.  See Re-Disclosed PSR ¶ 56, at 15.  On

February 23, 2012, the USPO issued an Addendum to the Presentence Report that reduced the amount of cocaine attributable to Carlos to 4.933 net kilograms as opposed to 9.986 net kilograms. See Addendum to PSR at 1. The USPO relies on "additional information . . . received from defense counsel advising the United States was in agreement with a stipulation to the plea agreement which indicates the defendant is only responsible for 4.933 net kilograms of cocaine." Addendum to PSR at 1. The change does not, however, affect the base offense level of 19 attributed to Carlos. See Addendum to PSR at 1.

On March 23, 2012, Carlos filed his Objections. See Doc. 157. He argues that there are a variety of mitigating circumstances justifying a downward variance, including his need to support his children and his poor eyesight. See Objections at 6-7. He asserts that, even though a minor role adjustment is not normally appropriate under U.S.S.G. § 2X4.1, Hunter's significantly larger role in the criminal activity at issue compared to his involvement supports the application of a 2-level reduction on his offense level based on his minor role. See Objections at 7-8. Additionally, he argues that his criminal history category substantially over-represents the seriousness of his criminal history given that his felony charge for non-support of dependents is typically a civil matter. See Objections at 8-9. He argues that a criminal history category of II is more appropriate. See Objections at 8. He requests that the Court vary downward to a sentence of probation. See Objections at 9-10.

On March 29, 2012, the USPO disclosed a Second Addendum to the Presentence Report to respond to Carlos' objection regarding the minor role adjustment and his objection that his criminal history category substantially over-represents his criminal history. See Second Addendum to PSR at 1-2. The USPO asserts that the base offense level for misprison of felony already takes into account a mitigating role adjustment. See Second Addendum to PSR at 1. The USPO represents

that a departure based on substantial over-representation of criminal history is not appropriate given that Carlos did not comply with the state court's requirements and had his probation revoked.  <u>See</u> Second Addendum to PSR at 2.

On March 30, 2012, Plaintiff United States of America filed its United States' Response to Defendant's Objections to the Pre-Sentence Report, and Motion for Downward Departure and/or Variance.  <u>See</u> Doc. 158 ("Response").  The United States agrees that the Court should accept the parties' stipulation as to a minor role adjustment.  <u>See</u> Response at 1.  The United States notes that, on the issue of Carlos' criminal history category substantially over-representing his criminal history, it "would leave the balancing of these factors to the discretion of the Court."  Response at 2.  The United States noted that "had the non-support been a misdemeanor conviction, it would have been excluded from the criminal history calculation by U.S.S.G. § 4A1.2(c)(1)."  Response at 2.  The United States argues that a sentence within the advisory guideline range would be more appropriate and would more fully reflect the factors contained in 18 U.S.C. § 3553(a).  <u>See</u> Response at 7.  On April 3, 2012, the USPO filed a Re-Disclosed PSR to add a section regarding imposing conditions of supervised release.  There being no disputes about the Re-Disclosed PSR's factual findings, the Court will adopt them as its own.

At the sentencing hearing on April 3, 2012, the Court stated that it was not inclined to attribute only 4.933 kilograms of cocaine to Carlos and that it was inclined to attribute 9.986 kilograms of cocaine to Carlos.  <u>See</u> Transcript of Hearing at 2:1-5:24 (taken April 3, 2012)(Court)("Tr.").[1]  The parties noted that they agreed on this amount of cocaine based on some Carlos' fingerprints that were found on packages in only one of the bags.  <u>See</u> Tr. at 5:25-6:24

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

(Wilson, Court, Kotz).   The Court stated that it did not believe that this fact regarding the fingerprints would affect the issue of what amount Carlos should have reasonably known would have been involved in the drug conspiracy.   See Tr. at 6:24-7:8 (Court).  The Court then noted that it was not inclined to apply a minor role adjustment, because Carlos has already received a mitigating role adjustment under the misprison of felony charge he faces.   See Tr. at 9:23-13:6 (Court).  The parties stated that they were fine with the Court varying downward to reach a sentence rather than decreasing the offense level through a minor role adjustment.   See Tr. at 13:7-13:22 (Wilson, Court, Kotz).   On the issue of his criminal history category, Carlos noted that his felony charge of non-support of dependents would be a civil claim in most jurisdictions.   See Tr. at 14:25-16:3 (Wilson).  After discussing the issue with the probation officer at the hearing, the Court noted that, if the non-support conviction would have been a misdemeanor and Carlos had not received jail time for the offense, he would not have received any criminal history category points for this offense under U.S.S.G. § 4A1.2(c)(1).   See Tr. at 18:5-9 (Court).  The Court then departed downward to a criminal history category of II.   See Tr. at 18:16-19:11 (Court).   Carlos noted that he is a good candidate for a downward variance, because he has been compliant with United States Pretrial Services, and because he is not a drug or alcohol user.   See Tr. at 21:5-17 (Wilson).  He stated that his eye condition limits his ability to leave his home.   See Tr. at 21:5-17 (Wilson).  Carlos said that he does not have crimes in his past that would suggest he has violent tendencies.   See Tr. at 24:2-25:2 (Wilson).  Carlos asserted that his vision has interfered with maintaining employment.   See Tr. at 27:10-18 (Carlos).  The United States responded that there are facts in this case that would support a downward departure or variance, and that it would commit the ultimate sentence to the discretion of the Court.   See Tr. at 28:21-29:9 (Kotz).

## LAW REGARDING MISPRISION OF FELONY

"In calculating the base-offense level for the conduct that constitutes misprision, the Guidelines cross-reference to the calculations for the underlying offense, thereby ensuring that the offense level for failure to report a known federal crime reflects the seriousness of that underlying offense." United States v. Hernandez, No. 03-2451, 2008 WL 4820800, at *5 (D.N.M. June 30, 2008)(Browning, J.). U.S.S.G. § 2X4.1 provides the guideline sentence for misprision of felony, which is codified at 18 U.S.C. § 4. See U.S.S.G. § 2X4.1. U.S.S.G. § 2X4.1 provides: "Base Offense Level: 9 levels lower than the offense level for the underlying offense, but in no event less than 4, or more than 19." U.S.S.G. § 2X4.1. Application note 1 to this guideline states: "'Underlying offense' means the offense as to which the defendant is convicted of committing the misprision. Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." U.S.S.G. § 2X4.1 cmt. n.1. When calculating a defendant's base offense level under this guideline in the context of drug quantities, the United States Court of Appeals for the Tenth Circuit has held that the sentence should be "calculated on a base offense level determined by reference to the actual quantity of drugs involved in the conspiracy provided that [he or] she knew or should have known that at least such amount was involved." United States v. Williams, 897 F.2d 1034, 1041 (10th Cir. 1990). When calculating drug quantities, "[u]nless otherwise specified," courts look at "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) cmt. n.(A).

Application note 2 to this guideline provides: "The adjustment from § 3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level." U.S.S.G. § 2X4.1 cmt. n.2. When interpreting this application note, the

United States Court of Appeals for the Fifth Circuit has held that, "[b]ecause § 2X4.1 presupposes a defendant's lack of involvement in the underlying offense, any adjustment based on reduced culpability (U.S.S.G. § 3B1.2) must be based on a mitigating role in the misprision offense." United States v. Godbolt, 54 F.3d 232, 234 (5th Cir. 1995)(per curiam). Thus, according to the Fifth Circuit, a court should not take into account, for purposes of applying a mitigating role adjustment, "any mitigating role that [the defendant] may have played in the underlying offense." United States v. Godbolt, 54 F.3d at 234.

## ANALYSIS

The Court concludes that it is more appropriate to attribute all of the cocaine found in the two bags on the train to Carlos as opposed to the cocaine found in only one of the bags. The Court also determines that a minor role adjustment is not appropriate in light of Carlos' charge for misprison of felony. The Court believes that a criminal history category of II more accurately reflects Carlos' criminal history than a criminal history category of III. The Court will vary downward to a sentence of 58 days or time served, whichever is less. The Court will require Carlos to submit to home detention and to electronic monitoring for a period of 4 months.

## I.   THE COURT CONCLUDES THAT 9.986 KILOGRAMS OF COCAINE IS ATTRIBUTABLE TO CARLOS AS OPPOSED TO 4.933 KILOGRAMS.

Application note 1 to U.S.S.G. § 2X4.1 states: "'Underlying offense' means the offense as to which the defendant is convicted of committing the misprision. Apply the base offense level plus any applicable specific offense characteristics that were known, or reasonably should have been known, by the defendant." U.S.S.G. § 2X4.1 cmt. n.1. When calculating a defendant's base offense level under this guideline in the context of drug quantities, the Tenth Circuit has held that the sentence should be "calculated on a base offense level determined by reference to the actual quantity

of drugs involved in the conspiracy provided that [he or] she knew or should have known that at least such amount was involved." United States v. Williams, 897 F.2d at 1041. When calculating drug quantities, "[u]nless otherwise specified," courts look at "the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c) cmt. n.(A).

The Court concludes that there is no sound basis to distinguish the two black leather duffle bags in the train that would justify attributing the drugs in only one of the bags to Carlos as opposed to the drugs in both bags. Carlos admitted that he saw Hunter purchase both bags. See PSR ¶ 13, at 6. Carlos admitted to carrying only one of the bags. See PSR ¶ 13, at 6. Nevertheless, it is not required that Carlos have carried both bags for each bag to be attributable to him as part of a drug conspiracy. The question is whether he "knew or should have known that at least such an amount was involved," specifically the 9.986 kilograms as opposed to the 4.933 kilograms. United States v. Williams, 897 F.2d at 1041. Given that Carlos was aware of the existence of the second bag, was himself carrying one of the bags that contained cocaine, and was traveling with Hunter, he reasonably should have known that both bags contained narcotics. There are no facts that would materially distinguish between his connection to either one of the two bags. He should have still reasonably known that both bags contained drugs, and that he carried only one of the bags and that they were in different locations in the train does not support a contrary conclusion, given that he was aware of the existence of both bags and was traveling with Hunter. If there was no evidence to support a conclusion that he knew of the existence of a second bag, then the Court might be justified in concluding that he should not have reasonably known about the drugs in the second bag. Conversely, if there was no evidence supporting a conclusion that he should have reasonably known that either bag contained drugs, then the Court should attribute none of the drug amounts to Carlos.

-10-

The facts before the Court, however, indicate that Carlos should have reasonably known that both bags contained narcotics.

## II.    THE COURT CONCLUDES THAT A MINOR ROLE ADJUSTMENT IS NOT APPROPRIATE FOR CARLOS' OFFENSE.

Application note 2 to U.S.S.G. § 2X4.1 provides: "The adjustment from § 3B1.2 (Mitigating Role) normally would not apply because an adjustment for reduced culpability is incorporated in the base offense level."  U.S.S.G. § 2X4.1 cmt. n.2.  When interpreting this application note, the Fifth Circuit has held that, "[b]ecause § 2X4.1 presupposes a defendant's lack of involvement in the underlying offense, any adjustment based on reduced culpability (U.S.S.G. § 3B1.2) must be based on a mitigating role in the misprision offense."  United States v. Godbolt, 54 F.3d at 234.  Thus, according to the Fifth Circuit, a court should not take into account, for purposes of applying a mitigating role adjustment, "any mitigating role that [the defendant] may have played in the underlying offense."  United States v. Godbolt, 54 F.3d at 234.

Here, there are no facts supporting a minor role adjustment for the part that Carlos played in the misprison of felony.  While there are facts suggesting that he played a minor role in the underlying felony offense of possession with intent to distribute cocaine, there are no facts suggesting he played a minor role in the misprison of felony.  The Court finds persuasive the Fifth Circuit's rationale that courts should not take into account "any mitigating role that [the defendant] may have played in the underlying offense," United States v. Godbolt, 54 F.3d at 234, given that "an adjustment for reduced culpability is incorporated in the base offense level" for misprison of felony, U.S.S.G. § 2X4.1 cmt. n.2.  Doing otherwise would provide a greater reduction to a defendant's offense level than the guidelines contemplate.  On the facts before the Court, the Court does not see a basis to justify an additional downward role adjustment given that "an adjustment for reduced

culpability is incorporated in the base offense level" for misprison of felony.  U.S.S.G. § 2X4.1 cmt. n.2.  It is significant here that there are no other individuals charged with misprison of felony or, on the facts before the Court, that appear to have engaged in misprison of felony.  Application note 2 to U.S.S.G. § 3B1.2 provides that "[t]his guideline is not applicable unless more than one participant was involved in the offense."  U.S.S.G. § 3B1.1 cmt. n.2.  There was, of course, more than one participant in the criminal activity, because Hunter was involved in the predicate felony offense.  But Carlos has already received a role adjustment based on his misprison of felony charge, which is less serious than a charge of possession with intent to distribute cocaine.  One plausible scenario where a minor role adjustment might be appropriate for misprison of felony would be when there are multiple defendants charged with misprison of felony and some defendants played a significantly more culpable role in committing misprison of felony -- such as if they were aware of the felony for a much longer period of time and played an active role in keeping that information away from authorities.  Those are not the facts before the Court, however.  The parties have presented no basis to the Court to support a conclusion that this case falls outside the standard scenario contemplated in application note 2 to U.S.S.G. § 2X4.1, specifically, that a minor role adjustment is generally not appropriate for misprison of felony.

### III.   THE COURT CONCLUDES THAT A CRIMINAL HISTORY CATEGORY OF III SUBSTANTIALLY OVER-REPRESENTS CARLOS' CRIMINAL HISTORY.

U.S.S.G. § 4A1.3(b)(1) provides: "Standard for Downward Departure. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted."  U.S.S.G. § 4A1.3(b)(1).  With a departure under U.S.S.G. § 4A1.3, "[a]s with all departure decisions, the district court should consider all of

the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism."  United States v. Caldwell, 219 F.3d 1186, 1192 (10th Cir. 2000).

The Court believes that a downward departure to a criminal history category of II is appropriate in light of Carlos' criminal history.  Carlos has only three prior convictions -- adult or juvenile.  While he has received some charges for receiving stolen property, he has no history of violent convictions.  Additionally, his felony charge for non-support of dependents would be a misdemeanor in many jurisdictions as opposed to a felony.  See M.A. Simons, Prosecutorial Discretion and Prosecution Guidelines: A Case Study in Controlling Federalization, 75 N.Y.U. L. Rev. 893, 941-42 (2000)("In addition to civil enforcement remedies, all fifty states have enacted criminal sanctions of one form or another for failure to pay child support.  Those sanctions range from a misdemeanor punishable by ninety days in jail to a felony punishable by up to fourteen years in jail." (footnotes omitted)).  Notably, under U.S.S.G. § 4A1.2(c)(1), Carlos would have received criminal history points for a similar misdemeanor charge only if he had received "a term of probation of more than one year or a term of imprisonment of at least thirty days."  U.S.S.G. § 4A1.2(c)(1).  Given his poor eyesight, which affects his ability to work, his conviction for non-support of his children does not appear to be a serious crime.  When one accounts for his poor medical condition from his eye problems and his approximate age of thirty-seven, the Court does not believe that Carlos' criminal history suggests he will pose a high risk of recidivism.  He seems unlikely to commit any future crimes or to violate his supervised release.  He is only one point within a criminal history category III.  The Court concludes that a criminal history category III substantially over-represents his criminal history and the likelihood he will commit crimes in the future.  Ultimately, the Court concludes that a criminal history category of II more accurately represents Carlos' criminal history.

## IV.    THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 58 DAYS OR TIME SERVED, WHICHEVER IS LESS.

After applying a downward departure to Carlos' criminal history category, he has an offense level of 16 and a criminal history category of II.  An offense level of 16 and a criminal history category of II yields a guideline imprisonment range of 24 to 30 months.  Other than the amount of drugs attributable to Carlos and the downward departure on Carlos' criminal history category, the Court will adopt the guideline calculation in the Re-Disclosed PSR as its own.

The Court notes that Carlos had knowledge of the commission of a felony, specifically possession with intent to distribute cocaine.  The Court has carefully considered the parties' arguments and the circumstances of this case.  The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth is not appropriate for Carlos' offense.  The Court agrees with Carlos that a sentence of 58 days or time served, whichever is less, is sufficient to reflect the seriousness of this offense.  There are approximately ten factors in this case that counsel in favor of a downward variance: (i) Carlos appears to be a loving father who maintains contact with his children; (ii) he does not have a history of violence, or drug or alcohol abuse; (iii) Carlos' father appears to have had little involvement in his life; (iv) Carlos spent time in the United States Navy; (v) he has significant eye and health problems that are so severe he will be less likely to commit additional offenses in the future; (vi) the dismissal of the charges against co-Defendant Hunter based on the suppression of the evidence against Hunter creates some unwarranted sentencing disparities among similarly situated defendants, see Memorandum Opinion and Order Granting in Part Defendant's Motion to Suppress, filed July 1, 2010 (Doc. 94); Memorandum Opinion and Order on Evidence to Be Suppressed, filed August 11, 2010 (Doc. 101);

-14-

Order Dismissing Indictment Without Prejudice, filed November 30, 2010 (Doc. 111); (vii) the overall minor role Carlos played in the underlying criminal activity; (viii) Carlos has worked with federal officials by self-surrendering and otherwise behaving well; (ix) he has performed well on supervised release; and (x) he lives with his mother and has been good to her. Two factors that counsel against a variance are his lack of employment history and that he has had problems supporting his children, although some of these problems tie into his trouble with his eyes. Ultimately, in light of those factors, the Court believes that a variance that is the equivalent of 8 offense levels is appropriate. An offense level of 8 and a criminal history category of II yields a guideline imprisonment range of 4 to 10 months. Rather than impose additional incarceration, which seems to be unnecessary and to be more punishment than is necessary, the Court believes that home detention and electronic monitoring for a period of 4 months is a more appropriate substitute that will approximate the intent of the guidelines' recommendation of incarceration. Carlos confirmed that his mother, with whom he lives, has a land-line telephone that would permit electronic monitoring.

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals. The Court believes that a sentence of 58 days or time served, whichever is less, is appropriate to reflect Carlos' criminal history and the seriousness of Carlos' crime. Other conditions that the Court will require as part of supervised release will also provide Carlos with some needed education, training, and care to prevent these problems from reoccurring. This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a). Given that Hunter was

-15-

the more culpable individual in the underlying criminal conduct, the Court believes that this sentence adequately reflects the seriousness of the offense and promotes respect for the law. Additionally, given the variety of mitigating circumstances in Carlos' case, the Court believes that the sentence provides just punishment.  Given that Carlos is receiving a felony conviction that will stay with him the rest of his life, the Court believes that the sentence provides adequate deterrence both generally to the public and specifically to Carlos.  Carlos is now approximately thirty-seven years old, and his rate of recidivism is likely lower than younger defendants.  Thus, the Court believes that the sentence adequately protects the public in light of the seriousness of the offense. Furthermore, given that the charges against Hunter were dismissed, the Court believes that the sentence avoids unwarranted sentencing disparities among similarly situated defendants.  Imposing additional incarceration will not more fully reflect the factors embodied in 18 U.S.C. § 3553(a). While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Carlos to 58 days or time served, whichever is less.  The Court will require Carlos to submit to home detention and electronic monitoring for a period of 4 months as part of a 1-year term of supervised release.

　　　　**IT IS ORDERED** that the Defendant's Objections to the Pre-Sentence Report, and Motion

for a Downward Departure and/or a Variance, filed March 23, 2012 (Doc. 157), are overruled in part

and sustained in part.  The Court will grant the request for a downward departure and for a variance

contained in the Objections.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Stephen R. Kotz
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Benjamin C. Wilson
Albuquerque, New Mexico

     *Attorney for the Defendant*